[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Presently before this court is a presentment of the respondent on allegations of attorney misconduct. The presentment charges the respondent violated the following sections of the Rules of Professional Conduct:
 DR 6-101 Failing to Act Competently. (A) A lawyer shall not: . . .
 (2) Handle a legal matter without preparation adequate in the circumstances.
 (3) Neglect a legal matter entrusted to him.
Rule 1.1 Competence
 A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.
Rule 1.3 Diligence CT Page 3911
 A lawyer shall act with reasonable diligence and promptness in representing a client.
Rule 1.4 Communication
 (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
 (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.[1]
The respondent was duly admitted as a member of the Bar of the State of Connecticut on September 5, 1967. He has been a single practitioner engaged in the general practice of law.
In or about September, 1983, Jean Whalen was injured in a slip and fall incident. The respondent undertook representation of her in pursuit of her claim for personal injuries and damages resulting from that fall. The respondent came to represent Jean Whalen through his only office secretary, Arlene Powers, the daughter of Jean Whalen. Initially, the respondent arranged photographs of his client's injuries and made contact with the potential defendant to discover liability insurance information. Thereafter, in September, 1985, the respondent drafted, signed and had served by sheriff a writ, summons and complaint to institute legal action on behalf of Jean Whalen. When the sheriff had completed service and returned the writ, summons and complaint to the respondent's office, he took those papers for the purpose of returning them to court. Respondent did not do so. No suit was ever filed on behalf of Jean Whalen.
Arlene Powers left the respondent's employ in the spring of 1988. While she continued to work for the respondent, she believed her mother's case was actively pending in court. She was unaware that the original process was still in respondent's office file. During this period in respondent's employ, she was never advised by respondent of his failure to return these papers to court. In fact, she did not know if respondent himself realized his failure as he never mentioned it to her.
During this time frame, Jean Whalen had no personal contact with respondent. All communications with him went CT Page 3912 through her daughter.
After Arlene Powers left respondent's employ in 1988, she and her mother both made repeated, unsuccessful efforts to contact respondent about the status of her mother's case. They left repeated messages at his office to which respondent never replied. Finally, later in 1988, the respondent released his file to Jean Whalen.
Arlene Powers picked it up and saw the original complaint still in the file. This was her first knowledge it had not been returned to court. She verified this by checking with the court and told her mother what she had discovered. This was the first time Jean Whalen knew of such failure. Mother and daughter took the file to another attorney who confirmed their findings. Jean Whalen considered the respondent her attorney from the day she fell in 1983 until she had exhausted efforts to reach him in 1988 and the file was released to her.
Respondent acknowledged in his testimony upon the trial of this matter that as Jean Whalen's attorney he bore ultimate responsibility for his failure to return the writ to court. He was not aware of his failure until he received notice of this grievance proceeding. He had presumed the writ returned. He neither inquired of his secretary, Arlene Powers, or checked with the court to confirm that the writ had been filed. He had no procedure to safeguard return of the writ.
Respondent stated that having caused the writ to be served he did not open Jean Whalen's file for the next two and one half years while the file remained in his office. He conceded he was a bad administrator and that matters got away from him, particularly from November, 1987, through May, 1988, because of various criminal trials which kept him away from his office.
Based on the foregoing facts, petitioner has proved by clear and convincing evidence that respondent violated Rules of Professional Conduct DR 6-101 (A)(2), DR 6-101 (A)(3), 1.3 and 1.4.
Respondent violated DR 6-101 (A)(2) by his lack of preparation and adequate office management to provide and confirm that the writ be and was returned to court so as to protect his client's claim. As this failure necessarily occurred before October 1, 1986, there is no violation of Rule 1.1.
Respondent violated DR 6-101 (A)(3) by his failure to return the writ to court and by his prolonged and profound CT Page 3913 neglect of Jean Whalen's file while it was in his office. This virtual abandonment of both the file and his client, and he ignored both, was a continuing course of omission beyond October 1, 1986. Accordingly, the absence of reasonable diligence and promptness after that date constitutes a violation of Rule 1.3.
Respondent violated Rule 1.4(a) from October 1, 1986 and thereafter, over a period of years, by failing to keep Jean Whalen reasonably informed about the status of her claim and by utterly failing to comply with her reasonable requests for information about her case. Respondent violated Rule 1.4(b) in the same time frame by failing to inform his client about the correct status of her case and to explain the consequences thereof to her so she could make informed decisions about her course of action.
The petitioner has failed to prove by clear and convincing evidence that respondent violated Rule 1.4 by failing to inform his client of Yale New Haven Hospital's small claims judgment against her. It appears from the evidence that Jean Whalen received notice of this judgment before the respondent whereupon she gave the matter to him.
This brings the court to the discipline it must fashion in light of the violations it has found and the respondent's prior disciplinary history. The respondent is presently suspended from the practice of law by order of Sullivan, J. in the matter of Statewide Grievance Committee v. James M. Diorio docket number 26 23 62. As this court interprets that suspension, which is eighteen months in duration, it will terminate May 30, 1991. While it is true that the misconduct found here occurred before the respondent was first suspended in November, 1988, this alone does not mitigate against further suspension in view of the blatant nature of the misconduct at hand. In and of itself, although the respondent pleads otherwise, the misconduct at hand warrants further suspension on its own substance. Nor is the court unmindful that the respondent's disciplinary history as far back as 1979 reveals a pattern of neglect and mismanagement. The violations found here do not represent an isolated incident.
Accordingly, this court suspends the respondent from the practice of law for the period of nine (9) months. Said suspension is consecutive to and in addition to the period of suspension imposed in any other presentment including that in docket number 26 23 62. This court's suspension shall not automatically terminate but shall be subject to the reinstatement procedure set forth in Section 36 of the Connecticut Practice Book. CT Page 3914
But for the suspensions already meted out by other judges of this court the suspension here would have been longer in duration.
JOSEPH A. LICARI, JR., JUDGE.